**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RODNEY L. EMIL,

     Petitioner

v.

WILLIAM GITTERE, et al.,

     Respondents

Case No.: 3:00-cv-0654-KJD-CBC

**ORDER**

     Pending before the court are respondents' motion to dismiss (ECF No. 255) and petitioner's motion for leave to conduct discovery (ECF No. 271) and motion for evidentiary hearing (ECF No. 272). With their motion to dismiss, respondents argue that several of petitioner Emil's habeas claims are untimely, procedurally defaulted, unexhausted, or not cognizable in this proceeding. Emil asks for leave to conduct discovery and an evidentiary hearing to support his opposition to the motion to dismiss and the merits of certain habeas claims. For reasons that follow, the court will grant in part and deny in part the motion to dismiss and deny petitioner's motions for discovery and an evidentiary hearing.

I.      BACKGROUND

Emil was convicted in 1988 of first degree murder with the use of a deadly weapon, for the murder of his stepfather, Charles Emil, and he was sentenced to death. *See Emil v. State*, 784 P.2d 956 (Nev. 1989). The conviction and sentence were affirmed on appeal. *Id*. In May 1990, Emil filed a motion for a new trial that was denied by the state district court and on appeal. ECF No. 191-2, p. 1-41. In July 1992, Emil initiated state post-conviction proceedings. *Id*., p. 43-61. Those proceedings lasted until August 30, 2000, when the Nevada Supreme Court denied a motion to rehear its order dismissing Emil's appeal. ECF No. 1, p. 82-94.

This federal habeas corpus action was initiated on December 13, 2000. ECF No. 1. Shortly after Emil filed an amended petition, the action was stayed, upon a stipulation of the parties, from May 4, 2006, to January 11, 2011, pending a state-court habeas action. ECF Nos. 159/174. After the stay had been lifted and Emil had filed a second amended petition (ECF No. 181), the Federal Public Defender for the District of Nevada (Nevada FPD) filed a motion to withdraw and was discharged from their representation of Emil on July 12, 2012. ECF No. 206. The Federal Public Defender for the Central District of California was then appointed to represent Emil. *Id*.; *see also* ECF No. 207.

On March 11, 2013, Emil filed a third amended habeas petition. ECF No. 212. On June 24, 2013, respondents filed a motion to dismiss. ECF No. 216. On September 11, 2013, Emil filed a motion for stay, which was granted on November 15, 2013. ECF Nos. 220/229.

The stay was lifted on January 6, 2017. ECF No. 241. Emil filed his fourth amended petition on March 7, 2017. On March 23, 2018, respondents filed the motion to dismiss that is before the court for decision.

\ \ \

## II.     APPLICABILITY OF AEDPA

As an initial matter, Emil contends that the Antiterrorism and Effective Death Penalty Act ("AEDPA") should not apply to this case because this court abused its discretion by dismissing his initial federal habeas petition, filed in 1991, rather than staying that proceeding and holding it in abeyance while he exhausted claims in state court.

In making this argument, Emil relies primarily on *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993). In *Fetterly*, a newly-appointed attorney discovered new, unexhausted claims several months after a habeas petitioner had filed a fully-exhausted petition in federal district court and, accordingly, asked the district court to stay federal habeas proceedings while he exhausted the new claims in state court. *See Fetterly*, 997 F.2d at 1297-98. The district court refused to grant the stay. *See id*. On appeal, the Ninth Circuit concluded that the district court's refusal constituted an abuse of discretion, holding that, under the unique circumstances of the case, the district court was not only permitted, but required, to stay proceedings on the exhausted petition pending exhaustion in state court. *See id*. at 1301.

Notwithstanding Emil's arguments to the contrary, the circumstances before this court when it denied Emil's request for a stay of his 1991 habeas proceeding bear scant resemblance to the circumstances before the federal district court when it denied the stay in *Fetterly*. The Ninth Circuit identified "two reasons it was an abuse of discretion for the district court to deny Fetterly's request for a stay." *See id.* First, the district court had erred in its view that Fetterly's new claims did not "raise an issue cognizable under habeas." *Id*. Second, the attorney who represented Fetterly in filing his initial federal habeas petition also represented him in the state trial court when the error giving rise to the unexhausted claims may have been committed, which "raise[d] the specter of ineffective assistance of counsel." *Id*.  As such, the Ninth Circuit

1  "believe[d] the only appropriate course for the district court was to allow Fetterly's new attorney
2  to advance claims missed by the attorney who overlooked them." *Id*.

3        In denying Emil's request for a stay in 1992, this court did not, like the district court in
4  *Fetterly*, erroneously determine that the habeas claims Emil sought to exhaust in state court were
5  non-cognizable on federal habeas review. ECF No. 268, p. 45-46. And, because the counsel who
6  represented Emil in his state court trial and direct appeal were not involved in his federal habeas
7  proceeding, this court's denial of his stay in the 1991 case did not implicate the same ineffective
8  assistance of counsel (IAC) concerns present in *Fetterly*.

9        In addition, there is an important procedural distinction between the two cases. After
10 denying a stay, the district court in *Fetterly* denied Fetterly's original petition on the merits.
11 *Fetterly*, 997 F.2d at 1298. Fetterly timely appealed and, on appeal, raised as an issue whether
12 the district court had abused its discretion in rejecting his motion for a stay. *Id*. Here, Emil did
13 not appeal or seek reconsideration of this court's dismissal of his 1991 petition, but instead
14 challenges it for the first time 26 years after the fact.

15       It is also worth noting that the unfair impacts of the court's denial of the stay in *Fetterly*
16 were readily apparent at the time of the district court's decision and served as the basis for the
17 Ninth Circuit finding an abuse of discretion. By contrast, Emil claims the application of AEDPA,
18 enacted in 1996, as the inequity arising from this court's denial of his stay in 1992. This court
19 cannot be said to have abused its discretion for not anticipating the passage of AEDPA.
20 Consequently, this court rejects Emil's argument that AEDPA should not apply to this case.

21    III.    COGNIZABILITY

22       Respondents argue that several of Emil's habeas claims are not cognizable in a federal
23 habeas proceeding. To present a cognizable federal habeas corpus claim under § 2254, a state

prisoner must allege that he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court must dismiss a claim if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Rule 4, Rules Governing Section 2254 Cases.

The court notes that, for many claims, respondents' arguments are more properly characterized as a motion for summary judgment rather than an argument that Emil has not pled a cognizable claim. As a general matter, courts have found summary judgment motions appropriate in habeas corpus proceedings. *Blackledge v. Allison*, 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."). This court prefers, however, to address such arguments when it rules upon the merits rather than in the context of a motion to dismiss. Thus, the analysis here is confined to arguments that the claim, on its face, fails to state a claim for which federal habeas relief is available.

*Claim 4*

Respondents argue that Emil's claim based on allegations of actual innocence (Claim 4) is not cognizable in this federal habeas proceeding. The United States Supreme Court has acknowledged that whether a freestanding claim of actual innocence is cognizable on federal habeas review is an "open question." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). *See, also, Herrera v. Collins*, 506 U.S. 390, 417 (1993) (acknowledging the possibility that a freestanding actual innocence claim would exist in the capital context). Given this uncertainty, this court is not prepared, at this point, to dispose of Claim 4 on cognizability grounds.

*Claim 14*

In Claim 14, Emil alleges that lethal injection is cruel and unusual punishment under all circumstances and that lethal injection under Nevada's protocol is unconstitutional. Respondents argue that the latter aspect of the claim is meritless but concede that it is "factually and legally supported by argument."[1] As to the former, respondents argue that the claim has been foreclosed by Supreme Court case law, specifically *Baze v. Rees*, 553 U.S. 35 (2008). This court agrees that, under *Baze*, a general challenge to the constitutionality of lethal injection as a means of conducting an execution is of questionable merit. The court is not convinced, however, that such a claim is not cognizable as a federal habeas claim given that it could arguably be "deemed a challenge to the sentence itself." *See Hill v. McDonough*, 547 U.S. 573, 579–80 (2006) (discussing *Nelson v. Campbell*, 541 U.S. 637 (2004)). Thus, the court declines to dismiss Claim 14 for failure to state a cognizable habeas claim.

*Claim 19*

In Claim 19, Emil alleges that he was denied his right to effective assistance of post-conviction counsel. This claim is not a ground for relief in a habeas proceeding under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(i); *Pennsylvania v. Finley*, 481 U.S. 551,557 (1987) ("[T]he fundamental fairness mandated by the Due Process Clause does not require that the State supply a [post-conviction] lawyer."). Thus, the claim shall be dismissed.

\ \ \

\ \ \

---

[1] This court concluded in a recent case that "[a] challenge to a state's execution protocol is more akin to a suit challenging the conditions of custody, which must be brought as a civil rights action under 42 U.S.C. § 1983." *Nika v. Gittere*, 2019 WL 2453658, at *58 (D. Nev. June 12, 2019).

IV.    TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id*. A petitioner, like Emil, whose conviction became final before the enactment of AEDPA had until April 24, 1997, to file a timely federal habeas petition. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Mayle*, 545 U.S. at 663-64. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id*. at 661. The scope of Rule 15(c) must be read in light of Habeas Rule 2(c), which "instructs petitioners to 'specify all [available] grounds for relief' and to 'state the facts supporting each ground.'" *Id*. (alteration in original).

Respondents concede that Emil's initial petition was timely filed in December 2000. They contend, however, that numerous claims in his fourth amended petition do not relate back

7

to the initial petition and, therefore, must be dismissed as untimely. Respondents identify claims that fit in this category as follows:

> 1c, 1d (the report was not alleged in the 2000 petition to constitute *Brady* material), 1di, 1g (second half), 2b (this claim substantially differs from 2000 claim 6), 2c, 2e, 4, 5 (all), 6 (except for the allegations relating to the social security administration), 7C, 7D, 8, 9b (this claim differs substantially from 2000 claim 6Bi), 10(1), 10(2), 11(1), 11(2), 11(3), 12(b), 13, 14, 15, 16, 17, 18a (this claim differs substantially from 2000 claim 12(4) where the claim was not premised on Brady and the report was not alleged to be Brady material), 18b (this claim differs substantially from 2000 claim 12(2) in that the current claim is premised on Polk), 18i, 18j, 19, and 20.

ECF No. 255, p. 88.

### 1. *Equitable tolling*.

In response, Emil argues, among other things, that he is entitled to equitable tolling until the filing of his first amended petition in 2006. Equitable tolling is appropriate only if the petitioner can show: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

Emil points to his reliance on this court's scheduling orders, his reliance on Ninth Circuit case law on the relation-back doctrine, and the State's conduct during the relevant proceedings as the extraordinary circumstances warranting equitable tolling in his case. As support for his argument, he cites to *Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018).

In *Williams*, the petitioner filed his initial petition within the one-year statutory period under 28 U.S.C. § 2244(d) but filed his amended habeas petition raising new claims over a year beyond the end of the period. *Id*. at 557. While added claims that "relate back" to the initial petition under Fed. R. Civ. P. 15(c) may be considered timely, the *Williams* court opted not to

address relation-back because it concluded that petitioner was entitled to equitable tolling for the period between the statutory deadline (August 29, 1998) and the date he filed his amended petition (September 17, 1999). *Id*. at 558. In particular, the court granted equitable tolling based on petitioner's reasonable reliance on the unsettled state of the law on relation back in the habeas context during the relevant time period. *Id*. at 559-60.

The court found petitioner's reliance was "eminently reasonable" because (1) as of August 1998 petitioner's counsel "had no reason to suspect that Rule 15(c) would pose an obstacle to consideration of newly added claims in an amended petition" and (2) the federal district court and the State also assumed any newly added claims would relate back. *Id*. at 560-61. With respect to the former, the court cited to the Ninth Circuit's broad construction of the relation-back standard that prevailed at the time. *Id*. at 560. As for the district court, the court noted "the series of scheduling orders" that permitted Williams additional time to file his amended petition. *Id*. These orders were entered in accordance with the "George Memo," which established standardized procedures for adjudicating federal capital cases in Nevada. *Id*. at 556. The court also noted that "the State waited *eight years* after receiving the amended petition before moving to dismiss any of the claims on the ground that they did not relate back to the original petition under Rule 15(c)." *Id*. at 561 (emphasis in the original). The court summarized by stating that "it was not until the Supreme Court decided *Mayle* that anyone involved in this case suggested that the newly added claims might not relate back and could therefore be deemed untimely." *Id*.

Emil had a properly-filed state post-conviction proceeding pending at the time of AEDPA's enactment, so he is entitled to statutory tolling until those proceedings concluded on

September 15, 2000.[2] *See Patterson*, 251 F.3d at 1247. Thus, 89 days of the one-year statutory period had elapsed when Emil filed his initial habeas petition on December 13, 2000. He filed his first amended petition on March 3, 2006, 253 days after the decision in *Mayle* on June 23, 2005.

The circumstances of Emil's case are sufficiently analogous to those in *Williams* for this court to conclude that he is entitled to equitable tolling for the time period between the filing of his initial petition up until the issuance of the *Mayle* decision. Soon after the Federal Public Defender (FPD) accepted appointment as Emil's counsel, this court issued a scheduling order on January 29, 2001, setting a status conference for April 9, 2001. ECF No. 13. After that conference, the court entered a second scheduling order setting October 9, 2001, as the date for the parties to complete discovery, and December 10, 2001, as the deadline for Emil's amended habeas petition. ECF No. 16.

With the State having stipulated to an extension of time, Emil filed a motion for leave to conduct discovery on August 24, 2001. ECF Nos. 20-27. After both parties sought and obtained multiple extensions of time, the briefing on the discovery motion was completed in December 2001. ECF Nos. 30-38. The court granted the motion in March 2002. ECF No. 39.

When Emil filed a status report in August 2002 describing difficulties in obtaining discovery material (ECF No. 41), the court referred discovery issues and scheduling to the magistrate judge, who subsequently set October 4, 2002, as deadline for motions to compel and

---

[2] As noted above, the Nevada Supreme Court entered its order denying rehearing on August 30, 2000. However, the period of limitation resumes when the post-conviction judgment becomes final upon issuance of the remittitur. *Jefferson v. Budge*, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). While it does not appear as if the relevant remittitur is included in the record herein, this court takes judicial notice of the Nevada Supreme Court's online records for *Emil v. State*, Nevada Supreme Court Case No. 28463, which show September 15, 2000, as the date of issuance. http://caseinfo.nvsupremecourt.us/public/caseView.do;jsessionid=B1B4DB322BDBFBF4B13417FDE93699DC?csIID=1593.

suspended the court's scheduling order. ECF No. 42-44. The following two years were

consumed with the litigation of discovery issues. ECF Nos. 46-124. On November 18, 2004, the

court entered an order terminating discovery and setting March 25, 2005, as the new deadline for

Emil's amended petition. ECF No. 124. Emil subsequently sought and obtained four more

extensions of time, all unopposed, before filing an amended federal petition on March 3, 2006.

ECF Nos. 125-128, 130, 132-135.

All of the foregoing was consistent with the common procedure of this court in effect at

the time. As in *Williams*, Emil, this court, and the State relied on the assumption that any newly-

added claims arising from the same trial and conviction would automatically relate back to the

initial petition. That assumption was vindicated by the Ninth Circuit's decision in *Felix v. Mayle*,

379 F.3d 812 (9th Cir. 2004). It was not until the Supreme Court's issuance of *Mayle* that the

parties to this case and the court learned that only new claims that shared a "common core of

operative facts" with existing claims would relate back to the initial petition as contemplated in

Fed. R. Civ. P. 15(c). *See Mayle*, 545 U.S. 663-64.

The reasoning and holding in *Williams* compel this court to conclude that Emil is entitled

to equitable tolling from the date he filed his initial petition (December 13, 2000) until the date

the Supreme Court issued *Mayle* (June 23, 2005). Respondents raise no specific argument

against such a conclusion. Instead, they contend that Emil should have filed a "place holder"

petition immediately following the decision in *Mayle*. ECF No. 282, p. 11. Under the Ninth

Circuit's stop-clock rule, however, Emil was "entitled to use the full one-year statute-of-

limitations period." *See Grant v. Swarthout*, 862 F.3d 914, 919 (9th Cir. 2017). By showing an

entitlement to tolling for any amount of time during the limitations period, then that time is to be

subtracted from the total number of days that have passed from the date on which the AEDPA

limitations period began to run. *See id.* at 918. While it left for "another day" the question

whether a petitioner with a timely petition under this scenario "may need to prove that he was

diligent after an extraordinary circumstance has ended," the court in *Grant* strongly suggested

the answer is that he does not. *Id.* at 924 n.9.

With Emil entitled to equitable tolling from December 13, 2000, until June 23, 2005, his

amended petition was filed with 23 days of the statutory one-year period remaining.[3] Thus, all

the claims in the 2006 amended federal petition are timely.[4] The question then becomes whether

the claims in the fourth amended petition that respondents identify as untimely relate back to the

2006 amended federal petition.

2. *Claim-by-claim relation back analysis.*

Respondents do not dispute that Claims 4, 8, 10 through 15, and 17 relate back to the

2006 amended federal petition. ECF No. 282, p. 14. Emil concedes, however, that Claims 11B3,

alleging juror misconduct by prematurely deliberating in the guilt phase, and 12B5, alleging IAC

in the penalty phase for failing to investigate a lingering doubt defense, were not raised in his

initial petition or in the 2006 amended federal petition. ECF No. 273, p. 83, 86. Thus, except for

Claims 11B3 and 12B5, Claims 4, 8, 10 through 15, and 17 relate back to a timely-filed petition

and are timely.

---

[3] Respondents contend that, even allowing for equitable tolling until June 23, 2005, Emil's amended petition is still untimely because 169 days of the one-year period had already elapsed when Emil filed his initial petition in 2000. ECF No. 282, p. 11. In making this argument, however, respondents incorrectly identify March 29, 2000, as the remittitur date when, in fact, that was the date the Nevada Supreme Court dismissed Emil's appeal. As noted above, the remittitur was not issued until September 15, 2000.

[4] Having concluded the 2006 amended petition is timely due to equitable tolling, the court declines to address Emil's alternative argument that it is timely under 28 U.S.C. § 2244(d)(1)(D).

Claim 1C, a claim that the State suppressed exculpatory evidence regarding Alan Carmack and interfered with the defense's opportunity to present Carmack as a witness, relates back to Claim 4A of the 2006 amended federal petition. ECF No. 135-2, p. 12-14.

Claim 1D and subclaim 1D1 allege that the State suppressed blood spatter evidence and that counsel was ineffective by not consulting an expert and requesting a continuance. These claims relate back to Claim 19 of the 2006 amended federal petition. ECF No. 135-5, p. 27-32.

Claim 1G, a claim that counsel was ineffective by not discovering impeachment evidence for witnesses Woodall, Kenny, and Koba, relates back to Claims 1B, 2B, and 3B of the 2006 amended federal petition. ECF No. 135-2, p. 5, 7-8, 11.

Claim 2, a claim that counsel was ineffective in failing to investigate, impeach, and refute the testimony of Frederick Woodall, relates back to Claim 8 of the 2006 amended federal petition. ECF No. 135-4, p. 6-16.

Claim 3, a claim that Emil's constitutional rights were violated by the trial court's exclusion of Woodall's polygraph results, relates back to Claim 9 of the 2006 amended federal petition. ECF No. 135-5, p. 1-3.

Claim 5, a claim alleging pervasive prosecutorial misconduct, relates back to Claim 5 of the 2006 amended federal petition. ECF No. 135-2, p. 15-18.

Claim 6, a claim that counsel was ineffective in failing to challenge the aggravating circumstance of murder for remuneration, relates back to Claim 7 of the 2006 amended federal petition. ECF No. 135-4, p. 1-4.

Claim 7, a claim that the State's use of the Tolley murder in aggravation was unconstitutional, relates back to Claim 6 and 17 of the 2006 amended federal petition. ECF No. 135-3; ECF No. 135-5, p. 23-24.

In Claim 9B, Emil alleges that counsel was ineffective in failing to object to certain jury instructions (9B1 and 2) and that the trial court erred instructing jury in the penalty phase (9B3 and 4). Claim 9B1 regarding the malice instructions relates back to Claim 11 of the 2006 amended federal petition. ECF No. 135-5, p. 9-10. Respondents concede that Claims 9B2-4 relate back to the initial 2000 petition. ECF No. 255, p. 87-88.

Claim 16, a claim that the trial court coerced the jury into rendering a guilty verdict by unnecessarily sequestering the jury, does not relate back to any claims in the initial 2000 petition or the 2006 amended federal petition. This claim and the operative facts supporting it were raised for the first time in Emil's third amended petition filed in March 2013. ECF No. 212, p. 205-209. Thus, Claim 16 does not relate back to a claim or claims in a timely-filed petition. Emil's alternative grounds for finding the claim timely are addressed below.

In Claim 18, Emil alleges he received ineffective assistance of appellate counsel. He identifies ten issues counsel should have raised on appeal, which respondents denominated Claims 18a-18j. Respondents argue the Claims 18b, 18d,[5] 18i, and 18j do not relate back. Emil neglected to allege ineffective assistance of appellate counsel in his 2006 amended federal petition but Claims 18b and 18d relate back to Ground 12 in his initial 2000 petition. ECF No. 1, p. 54-55. The operative facts supporting Claims 18i and 18j were not raised in a timely filed petition and, therefore, do not relate back under Rule 15(c). Emil's alternative argument for finding Claims 18i and 18j timely is addressed below.

As discussed above, Claim 19 is dismissed as non-cognizable in a federal habeas proceeding.

---

[5] Respondents indicate that their reference to "18a" in their motion to dismiss was in error or intended as "18d." ECF No. 282, p. 19 n.4. Claim 18a relates back to Ground 12 in Emil's initial 2000 petition. ECF No. 1, p. 54-55.

In Claim 20, Emil alleges that the jury applied an unconstitutional standard of proof for weighing aggravating and mitigating factors. Emil concedes the claim does not relate back to a claim or claims in a timely-filed petition. Emil's alternative argument for finding the claim timely is addressed below.

Emil argues that he should be granted equitable tolling for any claim omitted from his initial petition and his 2006 amended petition – i.e., Claims 11B3, 12B5, 18i, 18j, and 19 -- because the omission was due to abandonment by his prior federal habeas counsel, the Federal Public Defender's Office (FPD) for Nevada. In particular, he points to the relationship between the FPD for Nevada and Patricia Erickson, who represented Emil in his initial state post-conviction proceeding but was removed by the Nevada Supreme Court for failing to prosecute Emil's appeal. Emil contends that a conflict of interest existed that was tantamount to attorney abandonment.

This argument is wholly without merit. Prior to being permitted to withdraw as counsel in 2012, the FPD of Nevada persistently litigated Emil's case, conducted extensive discovery and filed two comprehensive amended petitions. Emil fails to establish that he was abandoned in the same manner as the petitioner in *Maples v. Thomas*, 565 U.S. 266 (2012) or the other cases he cites as support for his argument. The omission of the handful of claims Emil identifies cannot be considered anything "more than 'garden variety' or 'excusable neglect,'" which is insufficient to establish equitable tolling. *Holland*, 560 U.S. at 652. Indeed, the court notes that current counsel omitted Claims 12B5, 18i and 18j from Emil's third amended petition filed in 2013. ECF No. 212.

For Claim 16, Emil argues that he should be granted equitable tolling because his failure to discover the facts supporting the claim was due to ineffective assistance of trial and post-

conviction counsel and the trial court's failure to place on the record (or notify defense counsel)

that the jury sequestration occurred. Here again, however, equitable tolling based on a prior

attorney's performance is generally reserved for cases of "egregious misconduct." *See Rudin v.*

*Myles*, 781 F.3d 1043, 1055 (9th Cir. 2015). Counsel's alleged failure to discover facts

underlying Claim 16 is not an extraordinary circumstance sufficient to support equitable tolling,

especially given Emil's alternative argument that the claim should be considered timely under 28

U.S.C. § 2244(d)(1)(D), which begins the statutory clock on the date the factual predicate for the

claim is discoverable through the exercise of due diligence. And, with respect to that argument,

Emil fails to explain why the factual predicate of a claim could not have been discovered earlier

through the exercise of due diligence. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012).

Finally, Emil argues that Claim 20 is timely under 28 U.S.C. § 2244(d)(1)(D) because he

filed the claim within one year of the Supreme Court's decision in *Hurst v. Florida*, 136 S.Ct.

616 (2016), the case upon which it is based. This court has already rejected this argument and

sees no reason to deviate from its prior decision. ECF No. 250, p. 4-5.

In summary, Claims 11B3, 12B5, 16, 18i, 18j, and 20 are untimely and shall be

dismissed.

V.    EXHAUSTION

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner

has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509

(1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on

each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A

claim remains unexhausted until the petitioner has given the highest available state court the

opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988).

Respondents contend that Emil has not exhausted state court remedies for Claims 1G, 2C, 5B, 5D, 5E (in part), 7C, 8, 9B1, 11B2, 12B4, 12B5, 13, 14A, 14B, 14C, 15, 18c, 18i, 18j, 19, and 20.

As noted above, Claim 1G is a claim that counsel was ineffective by not discovering impeachment evidence for witnesses Woodall, Kenny, and Koba. Emil presented this claim to the Nevada Supreme Court in his first state post-conviction proceeding. ECF 191-4, p. 91-93. The claim is exhausted.

As noted above, Claim 2 is a claim that counsel was ineffective in failing to investigate, impeach, and refute the testimony of Frederick Woodall. The portion of the claim respondents contend is unexhausted (i.e., Claim 2C) is an allegation that trial counsel failed to investigate Woodall's testimony about helping Emil cash a check allegedly given him by his mother as payment for killing Emil's stepfather. Emil presented this claim in his 2006 state post-conviction proceeding. ECF No. 192-2, p. 78. The claim is exhausted.

In Claim 5B, Emil alleges that the prosecutor committed misconduct in violation of his constitutional rights by bolstering the credibility of certain witnesses. Emil presented this claim in his first state post-conviction proceeding. ECF No. 191-4, p. 31-32 n.13. The claim is exhausted.

In Claim 5D, Emil alleges that the prosecutor committed misconduct in violation of his constitutional rights by making improper remarks disparaging the defense, arguing facts outside of the evidence, and inserting his own opinion. Emil contends that he exhausted this claim in his first state post-conviction proceeding, but the claim he cites as effecting exhaustion differs significantly from Claim 5D. *Cf.* ECF No. 191-4, p. 39-40, n.17 *and* ECF No. 244, p. 81-85. The claim is unexhausted. *See Henry*, 513 U.S. at 366 ("[M]ere similarity of claims is insufficient to exhaust.").

Respondents argue that Claim 5E is unexhausted to the extent that it alleges the State violated Emil's right to silence. This court agrees that this aspect of the claim is unexhausted as that legal theory was never presented to the Nevada Supreme Court.

In Claim 7C, Emil alleges that the trial court erred by failing to provide defense counsel with enough time or notice to investigate evidence regarding the Tolley murder. Emil alleged

18

similar facts in support of an IAC claim, but not a claim premised on trial court error. ECF No. 191-4, p. 109-110. Claim 7C is unexhausted.

In Claim 8, Emil alleges that his death sentence is invalid because the trial court erred in the death penalty weighing process. Emil contends the claim was exhausted by the presentation of Claim 12 in his 2006 habeas petition. ECF No. 192-3, p. 10-13. The court agrees. Claim 8 is exhausted.

In Claim 9B1, Emil alleges trial counsel was ineffective for failing to object to a jury instruction on malice. Respondents' argument that the claim is unexhausted is without merit as Emil exhausted the claim in his first state post-conviction proceeding. ECF No. 191-4, p. 93-94.

In Claim 11B2, Emil alleges trial counsel was ineffective by not insisting on a jury instruction that the defendant's silence could not be used against him. Respondents' argument that the claim is unexhausted is without merit as Emil exhausted the claim in his first state post-conviction proceeding. ECF No. 192-3, p. 18-19.

In Claim 12, Emil alleges that his trial counsel provided ineffective assistance in the penalty phase of his trial. Claim 12B4 faults counsel for not retaining a mental health or child development expert. Claim 12B5 alleges that counsel was ineffective by not obtaining readily available documents supporting lingering doubt. Emil presented the former claim in his 2006 state post-conviction petition. ECF No. 192-3, p. 57-62. Emil did not present the latter claim to the state court. Thus, Claim 12B4 is exhausted, but 12B5 is not.[6]

---

[6] Respondents argue that Emil failed to present Claims 8 and 12B4 as claims in his appellate briefing. While that is true, the state district court dismissed all the claims in Emil's 2006 petition on procedural grounds. ECF No. 192-4, p. 1-11. So on appeal, the argument of the parties naturally concerned the procedural rulings of the state district court, and not the merits of the dismissed claims. Under these circumstances, the claims in the 2006 petition are exhausted. For reasons discussed below, however, the claims are procedurally defaulted.

In Claim 13, Emil alleges that his conviction and sentence are invalid because the judges adjudicating his claims on direct appeal are subject to popular election and, as a result, failed to conduct an adequate appellate review of his sentence and conviction. Emil exhausted the claim by presenting it in his 2006 state petition. ECF No. 192-3, p. 64-65, 89-91.

As noted above, Claim 14 is a claim that lethal injection is cruel and unusual punishment under all circumstances and that lethal injection under Nevada's protocol is unconstitutional. Emil exhausted the claim by presenting it in his 2006 state petition. ECF No. 192-3, p. 66-86.

In Claim 15, Emil alleges that his conviction and sentence are invalid due to cumulative errors in the guilt and penalty phases of his trial. The parties agree this claim is exhausted to the extent that it encompasses only claims that are properly before this court for review. ECF No. 273, p. 111; ECF No. 282, p. 22.

As noted above, Claim 18 is an ineffective assistance of appellate counsel claim that identifies ten issues counsel should have raised on appeal. Claim 18c faults counsel for not raising arguments challenging the reasonable doubt instruction given at the guilt phase and the penalty phase. The claim was exhausted in Emil's initial state post-conviction proceeding. ECF No. 191-3, p. 70; ECF No. 191-4, p. 12. Claim 18i, alleging ineffectiveness for not arguing jury misconduct for premature deliberating, was not presented to the state court and remains unexhausted. Claim 18j, alleging ineffectiveness for not arguing that trial counsel was ineffective in not requesting non-adverse inference jury instruction regarding defendant's silence, was presented to the state court in Emil's 2006 state petition and, therefore, is exhausted. ECF No. 192-3, p. 18-19, 92.

Claim 19 is dismissed as not cognizable in federal habeas proceedings.

As noted above, Claim 20 is a claim that the jury applied an unconstitutional standard of proof for weighing aggravating and mitigating factors. The claim is now exhausted. *See Emil v. State*, Nevada Supreme Court Case No. 73461, http://caseinfo.nvsupremecourt.us/public/case View.do;jsessionid=CB45E20FA3EC0258C04B27E196D3C50D?csIID=43692. As noted above, however, the claim is nonetheless time-barred.

Thus, in summary, Claims 5D, 5E(part), 7C, 12B5, and 18i are unexhausted. At this point, it is clear that Nevada's procedural rules regarding timeliness (Nev. Rev. Stat. § 34.726) and successive petitions (Nev. Rev. Stat. § 34.810) would not permit the Nevada courts to consider these claims. Thus, these claims are "technically exhausted but will be deemed procedurally defaulted unless the petitioner can show cause and prejudice." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

## VI. PROCEDURAL DEFAULT

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in Coleman stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.

1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which

must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*

Respondents argue that Claims 1C, 1D, 1G, 2B-E, 3,4, 5C-E, 6, 7D, 9B2, 10B2, 11B1, 11B3, 12B1-3, 13, 14B, 15, 16, and 17 are procedurally defaulted and must be dismissed.

Respondents point out that, with respect to Emil's 2006 post-conviction petition, the Nevada Supreme Court concluded that it had been untimely filed under Nev. Rev. Stat. § 34.726 and was a successive petition under Nev. Rev. Stat. § 34.810, ECF No. 192-4, p.73-74. Respondents further point out that, with respect to Emil's 2013 state post-conviction petition, the Nevada Supreme Court once again imposed the same procedural bars. ECF No. 240-5.[7] Without ambiguity, the state supreme court in both proceedings applied both bars to all of Emil's claims.

The Ninth Circuit Court has repeatedly rejected arguments that the Nevada Supreme Court has inconsistently applied Nev. Rev. Stat. § 34.726 and has held the bar to be adequate to support application of the procedural default doctrine. *See Williams*, 908 F.3d at 579–80; *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996). Emil's arguments do not place the adequacy of the rule at issue, so as to shift the burden to respondents. Accordingly, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of Emil's defaults. Thus, the Nevada Supreme Court's application of the rule serves to bar this court's review of Emil's defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice.

---

[7] The Nevada Supreme Court also determined that both petitions were barred by laches under Nev. Rev. Stat. § 34.800. Respondents did not assert the application of the laches bar as an affirmative defense in their motion to dismiss.

With respect to Nev. Rev. Stat. § 34.810, there are Ninth Circuit cases holding the bar inadequate. *See Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002), *Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001), *and McKenna v. McDaniel*, 65 F.3d 1483, (9th Cir. 1995). The relevant dates in *McKenna* and *Petrocelli* were 1983 and 1985. *See McKenna*, 65 F.3d at 1487-88; *Petrocelli*, 248 F.3d at 886. The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778. While respondents claim that the Nevada Supreme Court has cited the provision 1,200 times, they have not met "the burden of demonstrating that, since *Valerio*, state courts have begun to regularly and consistently apply § 34.810 to habeas cases." *Riley v. McDaniel*, 786 F.3d 719, 722 n.4 (9th Cir. 2015). Thus, respondents have not established the adequacy of § 34.810 as a procedural bar for the purposes of this proceeding.

Emil contends that his claims are not procedurally defaulted because they were properly raised in state court on direct appeal, in his motion for new trial, or in his initial state post-conviction proceedings. The court now addresses those arguments.

1. *Claim-by-claim procedural default analysis.*

Claim 1C is a *Brady*[8] claim alleging the State suppressed exculpatory evidence related to Alan Carmack. Emil argues that the claim was presented in his motion for a new trial and his subsequent appeal. In that proceeding, however, Emil's argument to the Nevada Supreme Court was that the district court had erred by denying his motion for a new trial under state law. ECF No. 191-2, p. 24-37. He did not present the *Brady* claim in Claim 1C to the state court until his 2006 state post-conviction petition. ECF No. 192-2, p. 38-40. Thus, the claim is procedurally defaulted.

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

As noted above, Claim 1D is a claim alleging the State suppressed blood spatter evidence prior to trial. Emil presented this claim to the Nevada Supreme Court in his first state post-conviction proceeding. ECF 191-4, p. 87-90. Thus, the claim is not procedurally defaulted.

As noted above, Claim 1G is a claim that counsel was ineffective by not discovering impeachment evidence for witnesses Woodall, Kenny, and Koba. Emil presented this claim to the Nevada Supreme Court in his first state post-conviction proceeding. ECF 191-4, p. 91-93. Thus, the claim is not procedurally defaulted.

Claims 2B and 2D were presented in Emil's initial state post-conviction proceeding. ECF No. 191-3, p. 27-34; ECF No. 191-4, p. 91-93. Claims 2C and 2E were presented to the state court for the first time in Emil's 2006 post-conviction petition. ECF No. 192-2, p. 77-89. Thus, Claims 2B and 2D are not procedurally defaulted, but Claims 2C and 2E are.

As noted above, Claim 3 is a claim that Emil's constitutional rights were violated by the trial court's exclusion of Woodall's polygraph results. Emil presented this claim to the Nevada Supreme Court in his first state post-conviction proceeding. ECF 191-4, p. 103-104, p. 113. Thus, the claim is not procedurally defaulted.

Emil's actual innocence claim under Claim 4 has not been presented to the Nevada Supreme Court as a substantive constitutional claim. Emil argues that the claim cannot be defaulted and that, instead, it "serves as a gateway for reaching other claims." ECF No.273, p. 127 (citing *Schlup v. Delo*, 513 U.S. 298 (1995)). Viewing the claim in that manner, the court concludes, for reasons discussed below, that Claim 4 fails to serve that purpose.

Emil concedes that he did not present Claim 5C to the state court until his 2006 post-conviction petition. The claim is procedurally defaulted.

Emil contends that he presented Claim 5D in his first state post-conviction proceeding, but as noted above, the claim he cites differs significantly from Claim 5D. *Cf.* ECF No. 191-4, p. 39-40, n.17 *and* ECF No. 244, p. 81-85. The claim is technically exhausted, but procedurally defaulted.

In addition to the unexhausted portion alleging the State violated Emil's right to silence, Claim 5E alleges that the State improperly discussed the Tolley murder in a manner that inflamed the jury. Emil presented this argument on direct appeal. ECF No. 191-1, p. 45-47. Thus, that portion of 5E is not procedurally defaulted.

With respect Claim 6, Emil raised a claim in his initial state post-conviction proceeding that counsel was ineffective in failing to challenge the aggravating circumstance of murder for remuneration. ECF No. 191-3, p. 64-65; ECF No. 191-4, p. 107-08. Emil contends, however, that Claim 6 in his pending federal petition is a new claim under *Dickens v. Ryan*, 740 F.3d 1302, 1318-19 (9th Cir. 2014), because new allegations and evidence place the claim in "significantly different and stronger evidentiary posture" than the claim presented in his initial state petition. ECF No. 273, p. 130.

Thus, according to Emil, the claim is procedurally defaulted but the default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). The new allegations and evidence he cites consist of two witnesses who he claims would have helped him defend against the aggravating circumstance. ECF No. 273, p. 130. In this court's view, Emil has not "fundamentally altered" the claim that was properly presented in state court. *Cf. Dickens*, 740 F.3d at 1319 ("[T]he new evidence creates a mitigation case that bears little resemblance to the naked *Strickland* claim raised before the state courts."). Claim 6 is not procedurally defaulted.

Claim 7D, a claim that counsel was ineffective by failing to adequately investigate the other-murder aggravating factor, was not presented to the state court until Emil's 2006 post-conviction petition. ECF No. 192-2, p. 45-72. The claim is procedurally defaulted.

Claim 9B2 is a claim that trial counsel was ineffective in not objecting to a reasonable doubt instruction in the guilt and penalty phase. The claim was presented to the Nevada Supreme Court in Emil's first state post-conviction proceeding. ECF No. 191-4, p. 95. The claim is not procedurally defaulted.

Emil concedes that he did not present Claims 10B2, 11B1, and 12B1-3 to the state court until his 2006 post-conviction petition. The claims are procedurally defaulted.

Emil concedes that he did not present Claim 11B3 to the state court until his 2013 post-conviction petition. The claim is procedurally defaulted.

As noted above, Claim 13 is a claim that Emil's conviction and sentence are invalid because the judges adjudicating his claims on direct appeal are subject to popular election and, as a result, failed to conduct an adequate appellate review. Emil concedes that this claim was not presented to the state court until his 2006 state petition but argues that it is not defaulted because, based on *Thomas v. State*, 83 P.3d 818, 827 (Nev. 2004), the Nevada courts do not provide an adequate procedure to litigate this claim. This court is not convinced, however, that *Thomas* presented a procedural obstacle preventing Emil from raising the claim in his initial post-conviction proceeding. Claim 13 is procedurally defaulted.

Emil raises a similar argument with respect to Claim 14B, his method of execution claim. While this court questions Claim 14B's cognizability as a federal habeas claim (see footnote 1., above), Emil is correct in asserting that the Nevada courts will not entertain such a claim in a state post-conviction proceeding. *See McConnell v. State*, 212 P.3d 307, 311 (Nev. 2009). Thus,

Claim 14B is not procedurally defaulted. *See Hoffman v. Arave*, 236 F.3d 523, 530-36 (9th Cir. 2001).

In Claim 15, Emil alleges that his conviction and sentence are invalid due to cumulative errors in the guilt and penalty phases of his trial. The parties agree that the cumulative error claim in Claim 15 is not procedurally defaulted to the extent that it encompasses only claims that are properly before this court for review.

As noted above, Claim 16, a claim that the trial court coerced the jury into rendering a guilty verdict, was raised for the first time in Emil's third amended federal petition filed in March 2013. ECF No. 212, p. 205-209. Emil concedes that it was not presented to the state court until his subsequent 2013 state petition but contends the procedural default of the claim should be excused because he can demonstrate cause and prejudice.

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Emil argues that the facts underlying the claim were "so unusual, and so bizarre," that state habeas counsel's failure to bring the claim earlier should be excused. ECF No. 273, p. 143. However, he must make a "showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotations omitted).

He has not done so. ECF No. 240-4, p. 14-15. In fact, elsewhere in his opposition to respondents' motion to dismiss, he blames ineffective assistance of post-conviction counsel for the failure to discover the underlying facts for Claim 16. ECF No. 273, p. 87-88, 156-57. He also raised that justification in arguing cause and prejudice to excuse the default of the claim in state court. ECF No. 240-2, p. 51-60; ECF No. 240-4, p. 14-15. Claim 16 is procedurally defaulted.

In Claim 17, Emil alleges that his conviction is invalid because the jury was not required to find all the independent elements of first degree murder. Emil presented this claim in his initial state post-conviction proceeding. ECF No. 191-2, p. 59-81. Claim 17 is not procedurally defaulted.

In summary, Claims 1C, 2C, 5C, 7D, 8, 10B2, 11B1, 11B3, 12B1-4, 13, 14, 16, and 18j are procedurally defaulted because Emil defaulted these claims in state court pursuant to an independent and adequate state procedural rule.[9] As explained above, Claims 5D, 5E(part), 7C, 12B5, and 18i are technically exhausted claims that are now procedurally defaulted.

## 2. Martinez v. Ryan

Emil argues that the procedural default of his claims should be excused under the holding in *Martinez*.[10] In *Martinez*, the Supreme Court noted that it previously held, in *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse procedural default. *Martinez*, 566 U.S. at 15. The Court in *Martinez* "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion

_____

[9]  Claims 8, 12B4, 14, and 18j are claims for which respondents argued lack of exhaustion. Alternatively, respondents asserted procedural default for any claims presented for the first time in Emil's 2006 or 2013 state post-conviction proceeding. ECF No. 255, p. 59. As noted in the court's exhaustion analysis, these claims were exhausted in Emil's 2006 state post-conviction proceeding. Thus, they are procedurally defaulted.

[10] The court rejects Emil's related argument that his defaults should be excused under the holding in *Maples* because state post-conviction counsel Erickson abandoned him. Prior to being removed as counsel by the Nevada Supreme Court for failing to prosecute Emil's appeal, Erickson provided competent representation in the state district court. See ECF Nos. 153-8, 153-9, 153-10, 191-3. Likewise, Erickson's replacement, Patrick McDonald, provided satisfactory representation on appeal. ECF No. 191-4.

29

to raise a claim of ineffective assistance at trial." *Id.* at 8. Also, "[t]he holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16.

As an initial matter, *Martinez* cannot serve to excuse the default of any claim that is not an ineffective assistance of trial counsel claim. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (expressly declining to extend the *Martinez* exception to allow federal courts to consider ineffective assistance of appellate counsel claims). The ineffective assistance of trial counsel claims in Emil's fourth amended petition that are procedurally defaulted are Claims 2C, 2E, 7D, and 12B1-5. This court is unable to conclude that the default of these claims can be attributed to the allegedly deficient performance of counsel in Emil's initial post-conviction proceeding.

In *Martinez*, petitioner's counsel in his initial state collateral proceeding made no claim whatsoever that trial counsel was ineffective. *Martinez*, 566 U.S. at 6. When petitioner, represented by new counsel, sought to raise ineffective assistance of counsel claims in a subsequent proceeding, the Arizona courts dismissed the claims based on an Arizona rule barring claims that could have been raised in a previous collateral proceeding. *Id.* at 6-7. Thus, the petitioner's procedural default was complete when his counsel failed to raise claims in the initial-review collateral proceeding.

This case is decidedly different. To begin with, Emil's counsel presented numerous well-developed trial IAC claims in his initial post-conviction proceeding. See ECF Nos. 191-3, 2-71. And, the procedural default at issue here was not premised on the omission of claims from his initial petition but, instead on the state statute of limitations, Nev. Rev. Stat. § 34.726. The default occurred because Emil filed his petition "over 16 years after the remittitur issued on his

direct appeal and more than 6 years after [the Nevada Supreme Court] dismissed his prior post-conviction petition." ECF No. 192-4, p. 73. The attorney who represented Emil in his first state habeas action was removed as his counsel in 1997. ECF No. 268, p. 39-43.

Emil cannot blame the timeliness default on her allegedly deficient performance. Indeed, the Nevada Supreme Court noted as follows:

> The denial of Emil's most recent prior post-conviction petition was final in 2000, and he fails to explain his 6-year delay in filing the instant petition. Thus, he cannot use his claims of ineffective assistance post-conviction counsel as good cause to overcome the procedural bars to his other claims.

ECF No. 192-4, p. 76. This court concurs. Emil can hardly claim that his post-conviction counsel was ineffective in not bringing the relevant IAC claims within Nevada's one-year statutory period when his federal habeas counsel took six years to assemble and present those claims to the Nevada courts.[11] As a matter of equity, this court does not accept Emil's assertion of ineffective assistance of his counsel in his first state habeas action as cause for his failure to comply with the state statute of limitations in his second state habeas action. *See Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) ("The Supreme Court in *Martinez* established an equitable rule under which the failure of an ineffective counsel or pro se petitioner to raise, in a state court initial-review collateral proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause' to excuse a state-court procedural default."). Thus, Emil has not established cause for this court to excuse the procedural default of Claims 2C, 2E, 7D, and 12B1-5.

3. *Actual innocence.*

Emil also argues that his actual innocence serves as grounds to excuse his procedural defaults. A federal court may review the merits of a procedurally defaulted claim if petitioner

---

[11] In fact, Claim 12B5 has yet to be presented to the state court.

demonstrates that failure to consider the merits of his claim will result in a "fundamental

miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage

of justice" occurs when a constitutional violation has probably resulted in the conviction of one

who is actually innocent. *Id*. To satisfy the "fundamental miscarriage of justice" standard, a

petitioner must establish that it is more likely than not that no reasonable juror would have found

him guilty beyond a reasonable doubt in light of new evidence. *Id.* In this regard, the petitioner

must present "new reliable evidence — whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."

*Id*. at 324.

The "new evidence" to which Emil points to establish his actual innocence is a 2005

declaration by Dona Kenny, a former girlfriend of Federick Woodall, a critical witness for the

State who provided eye-witness testimony that Emil shot and killed the victim. ECF No. 273, p.

171—72 (citing to ECF No. 141-9). In this declaration, Kenny states, in part, as follows:

> Soon after Rodney's trial, in 1988 or 1989, Fred talked to me about the
> killing of Charles Emil. Fred told me that he killed the stepfather. I assumed that
> Fred was by himself. Fred said he just pulled up to the truck Charles Emil was in
> and shot him.

ECF No. 141-9, p. 2.

According to Emil, this statement establishes his actual innocence when considered in

conjunction with (1) Woodall's testimony that Emil shot his stepfather while standing in the bed

of a pickup truck, which is inconsistent with a report by a criminalist that indicates the shots

were fired by a person sitting in a truck along aside the victim; (2) a failed polygraph

examination of Woodall; and (3) Alan Carmack's denial of Woodall's testimony that Carmack

was driving the truck carrying Emil when the murder occurred. ECF No. 273, p. 172-73.

In rejecting Emil's insufficiency of evidence argument on direct appeal, the Nevada Supreme Court cited the following:

First, Frederick Woodall testified that on June 17, 1984, he saw Emil fire at the victim three or four times with a revolver. Woodall further stated that the passenger window of the truck occupied by the victim was shattered by the gunshots and that the victim fell onto the floorboard. Woodall's observations were consistent with the police and autopsy reports.

Second, Detective Geary of the Las Vegas Metropolitan Police Department testified that Woodall directed him to the murder site which was due south of the place where Charles Emil's truck and dead body were discovered. At the murder site identified by Woodall, Detective Geary discovered fragments of broken automotive glass which corroborated the testimony explaining why no glass fragments were found next to the vehicle where it was first discovered by the police.

Third, Woodall stated that on the day of the murder, Emil told him that he needed to call his stepfather and that he later observed Emil making a call from a public telephone shortly before he, Carmack and Emil met the victim's vehicle.

Fourth, Woodall testified that two or three weeks before the shooting Emil told him that it would be financially beneficial for Emil to kill his stepfather. Woodall also stated that on the day the victim was buried, Emil boasted that he was a good shot, having hit his stepfather three times in the heart and once in the brain.

Fifth, as previously noted, Martin Koba, one of Emil's associates, testified to overhearing someone whose voice sounded like Emil's state that he had been hired to kill his stepfather.

The foregoing notwithstanding, Emil correctly points out that there are time discrepancies in Woodall's testimony relating to the day of the murder. Hence, Emil argues that his conviction should be overturned for want of sufficient evidence. Woodall explained, however, that he was not wearing a watch on the day of the murder and had no reason to pay particular attention to the time.

*Emil*, 105 Nev. at 863–64.

Neither the criminalist's report (ECF No. 181-2) nor the polygraph test results (ECF No. 142-8) is particularly compelling evidence supporting Emil's alleged innocence. And, in rejecting a claim that Carmack's post-trial refutation of Woodall's testimony warranted a new

33

trial, the state district court concluded that "the timing and circumstances of the testimony of Alan Carmack make his disclosure inherently suspect" and found "that this three-time convicted felon is closely aligned to defendant Emil and is not a credible witness." ECF No. 191-2, p. 21. In affirming the lower court's decision, the Nevada Supreme Court noted that "because the gist of Carmack's testimony is that he remembers very little of anything, it is unclear as to whether his testimony was even relevant." ECF No. 191-2, p. 40-41.

Coming more than 25 years after the event in question, Kenny's vague hearsay statement regarding Woodall's "confession" is not the type of "new reliable evidence" contemplated by *Schlup*. *See Herrera*, 506 U.S. at 417–18 (viewing proffered affidavits in support of actual innocence as suspect, in part, because they "consist[ed] of hearsay' and "were given over eight years after petitioner's trial"). Kenny's account of the purported confession is incredible on its face and not supported by any credible corroborating evidence or a suggested motive for Woodall to kill Emil's stepfather. Beyond that, the court also notes that claims in Emil's federal habeas petition are premised on Kenny's lack of credibility. ECF No. 244, p. 50-54. Accordingly, Emil has not demonstrated that a failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice based on a threshold showing of actual innocence.

VII.    MOTIONS FOR DISCOVERY AND AN EVIDENTIARY HEARING.

In conjunction with his opposition to respondents' motion to dismiss, Emil has filed motions for leave to conduct discovery and for an evidentiary hearing. ECF Nos. 271/272. Part of Emil's requests for leave to conduct discovery and an evidentiary hearing is in relation to his *Martinez* arguments, specifically, "to show that post-conviction counsel was ineffective and that his underlying [IAC] claims have some merit." ECF No. 272, p. 6. However, the court's ruling

above – i.e., that there is an insufficient causal connection between the alleged ineffective assistance of Emil's counsel in his initial state post-conviction proceeding and the procedural default at issue – renders those issues moot.

Another reason Emil gives for the court to allow discovery and hold an evidentiary hearing is for him to demonstrate he is entitled to equitable tolling. Here again, however, the court's ruling above, granting equitable tolling, makes discovery and an evidentiary hearing unnecessary.

Emil also asks for leave to conduct discovery to support his actual innocence claim. Specifically, he requests the court to order the Las Vegas Metropolitan Police Department to submit latent fingerprints taken from the victim's truck to the FBI's Integrated Automated Fingerprint Identification System (IAFIS). According to Emil, a comparison of the latent prints to the "millions of fingerprint samples" in the IAFIS could show that "previously unknown suspects may have committed the crime." ECF No. 271, p. 14-15.

A federal habeas court may authorize parties to conduct discovery upon a showing of good cause. Rule 6(a) of the Rules Governing Section 2254 Proceedings. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is ... entitled to relief ...." *Bracy v. Gramley*, 520 U.S. 899, 908–09, (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Habeas petitioners may not, however, "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir. 1996). *See also Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011) ( "Kemp's claim of a jail-wide policy of eliciting incriminating statements has many of the indicia of an improper 'fishing expedition,' and the desire to engage in such an expedition cannot supply 'good cause' sufficient to justify

discovery."); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (petitioners may not seek to use discovery as a "fishing expedition ... to explore their case in search of its existence.") (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98 F.3d at 1106).

As discussed above, the "evidence" Emil has presented so far lacks credibility and/or probative force with respect to meeting the *Schlup* standard. With his discovery motion, he offers nothing more than a *possibility* that an IAFIS analysis of the latent fingerprints found in the victim's truck *might* provide information helpful to his actual innocence claim. Finding lack of good cause under *Bracy*, the court will deny Emil's request

Finally, Emil asks to conduct discovery to support the merits of Claims 1, 7, 11, and 16. In this respect, the motion is premature and will be denied without prejudice on that basis. *See* ECF No. 241, p. 2-3. To the extent the claims at issue have not been dismissed, Emil make a new motion for such discovery in conjunction with his briefing of the merits of the claims.

IT IS THEREFORE ORDERED that respondents' motion to dismiss fourth amended petition for writ of habeas corpus (ECF No. 255) is GRANTED IN PART AND DENIED IN PART. The following claims in petitioner's fourth amended habeas corpus petition (ECF No. 244) are dismissed for the reasons discussed above: Claims 1C, 2C, 2E, 4, 5C, 5D, 5E(part), 7C, 7D, 8, 10B2, 11B1, 11B3, 12B1-5, 13, 14, 16, 18i, 18j, 19, and 20. In all other respects, the motion to dismiss is denied.

IT IS FURTHER ORDERED that petitioner's motion for leave to conduct discovery (ECF No. 271) and motion for an evidentiary hearing (ECF No. 272) are DENIED.

IT IS FURTHER ORDERED that respondents shall file an answer within **90 days** from the entry of this order, responding to the remaining claims in petitioner's fourth amended habeas corpus petition (ECF No. 244).

IT IS FURTHER ORDERED that, in all other respects, the schedule set forth in the scheduling order entered on January 6, 2017 (ECF No. 241), shall remain in effect.

Dated: September 27, 2019

_____

UNITED STATES DISTRICT JUDGE